1    H. JOSEPH ESCHER III (No. 85551)
     h.joseph.escher@dechert.com
2    FRANCE JAFFE (No. 217471)
     france.jaffe@dechert.com
3    DECHERT LLP
     One Maritime Plaza, Suite 2300
4    San Francisco, California  94111-3513
     Telephone:    415.262.4500
5    Facsimile:    415.262.4555

6    Attorneys for Defendants
     ADVANTA BANK CORP.
7    and ADVANTA CORP.

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

13   RON STERN and JACK SCALFANI,          Case No. 09-cv-03276-PVT
     individually and on behalf of all others
14   similarly situated,                   Action Filed:  June 16, 2009

15                  Plaintiffs,             DEFENDANTS ADVANTA BANK
                                            CORP. AND ADVANTA CORP.'S
16   v.                                     REPLY MEMORANDUM IN SUPPORT
                                            OF MOTION TO DISMISS AND
17   ADVANTA BANK CORP., a Utah             STRIKE, OR IN THE ALTERNATIVE,
     corporation; ADVANTA CORP., a          TO TRANSFER TO THE DISTRICT OF
18   Delaware corporation, and DOES 1-20,   UTAH
                                            (Fed. R. Civ. P. 12(b)(3), 12(f); 28 U.S.C.
19                  Defendants.             § 1404(a))

20                                          Date:      September 1, 2009
                                            Time:      10:00 a.m.
21                                          Dep't:     Courtroom 5, 4th Floor
                                            Judge:     Honorable Patricia V. Trumbull
22

23

24

25

26

27

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

ARGUMENT......................................................................................................... 2

I.    PLAINTIFFS HAVE NOT OVERCOME THE PRESUMPTION IN
      FAVOR OF ENFORCING THE AGREEMENT'S FORUM
      SELECTION CLAUSE.................................................................................. 2

      A.    Defendants May Enforce A Forum Selection Clause After
            Removal Through A Rule 12(b)(3) Motion. ...................................... 2

      B.    Plaintiffs Had Ample Notice And Opportunity To Opt Out Of
            The Terms Of The Agreement, Including The Forum Selection
            Clause. ............................................................................................... 4

      C.    Because None Of The Exceptions Articulated In The Bremen
            Is Applicable, The Forum Selection Clause Should Be
            Enforced. ........................................................................................... 7

II.   THE COURT SHOULD TRANSFER THIS ACTION TO THE
      DISTRICT OF UTAH PURSUANT TO 28 U.S.C. § 1404(a)...................... 9

III.  PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE AND
      DECLARATORY RELIEF......................................................................... 10

CONCLUSION ................................................................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

Page

**Cases**

*Argueta v. Banco Mexicano, S.A.,*
    87 F.3d 320 (9th Cir. 1996) ............................................................................ 3, 4, 7

*Cardoza v. T-Mobile USA, Inc.,*
    No. 08-5120 SC, 2009 U.S. Dist. LEXIS 25895
    (N.D. Cal. Mar. 18, 2009) ...................................................................................... 9

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991) ....................................................................................... 4, 5, 9

*Deiro v. Am. Airlines, Inc.,*
    816 F.2d 1360 (9th Cir. 1987) ................................................................................ 6

*Dempsey v. Norwegian Cruise Line,*
    972 F.2d 998 (9th Cir. 1992) (per curiam) ............................................................. 6

*Forte Technical Sales, LLC v. Freescale Semiconductor, Inc.,*
    No. C 08-2153 JF, 2008 U.S. Dist. LEXIS 79464
    (N.D. Cal. Aug. 26, 2008) ...................................................................................... 3

*Foster v. Nationwide Mut. Ins. Co.,*
    No. C 07-04928 SI, 2007 U.S. Dist. LEXIS 95240
    (N.D. Cal. Dec. 14, 2007) ....................................................................................... 9

*Friberg v. Carson Energy, Inc.,*
    No. C 03-02138 CRB, 2003 U.S. Dist. LEXIS 8709
    (N.D. Cal. May 16, 2003) ....................................................................................... 3

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.,*
    485 F.3d 450 (9th Cir. 2007) .................................................................................. 5

*Kerobo v. Sw. Clean Fuels Corp.,*
    285 F.3d 531 (6th Cir. 2002) .................................................................................. 3

*Modius, Inc. v. PsiNaptic, Inc.,*
    No. C 06-02074 SI, 2006 U.S. Dist. LEXIS 28862
    (N.D. Cal. May 2, 2006) ......................................................................................... 3

*Murphy v. Schneider Nat'l, Inc.,*
    362 F.3d 1133 (9th Cir. 2004) ................................................................................ 8

*Nagrampa v. MailCoups, Inc.,*
    469 F.3d 1257 (9th Cir. 2006) (en banc) ................................................................ 6

*PT United Can Co. v. Crown Cork & Seal Co.,*
    138 F.3d 65 (2d Cir. 1998) ..................................................................................... 3

*Panetta v. SAP Am., Inc.*,
    No. C-05-01696 RMW, 2005 U.S. Dist. LEXIS 36813
    (N.D. Cal. July 26, 2005) ............................................................................. 3, 5

*Polizzi v. Cowles Magazines, Inc.*,
    345 U.S. 663 (1953) ......................................................................................... 3

*Pratt v. Silversea Cruises, Ltd.*,
    No. C 05-0693 SI, 2005 U.S. Dist. LEXIS 14339
    (N.D. Cal. July 13, 2005) ................................................................................. 8

*SeeComm Network Servs. Corp. v. Colt Telecomms.*,
    No. C 04-1283 MEJ (N.D. Cal. Sept. 3, 2004) ............................................... 3

*Soil Shield Int'l v. Lilly Indus., Inc.*,
    No. C 98-1353 SC, 1998 U.S. Dist. LEXIS 8002,
    (N.D. Cal. May 29, 1998)............................................................................. 2, 3

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
    926 F.2d 865 (9th Cir. 1991) ........................................................................... 2

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ....................................................................................... 3, 4

*The Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ............................................................................................. 7

*Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. Inc.*,
    118 F. Supp. 2d 997 (C.D. Cal. 2000)............................................................. 2

*Waters v. Advent Prod. Dev., Inc.*,
    No. 07cv2089 BTM (LSP), 2008 U.S. Dist. LEXIS 50686
    (S.D. Cal. June 26, 2008) ........................................................................ 1, 2, 3

### Statutes and Rules

28 U.S.C. § 1404(a) ................................................................................................. 2, 4

28 U.S.C. § 1406(a) ...................................................................................................... 4

Fed. R. Civ. P. 12(b)(3) ........................................................................................ 1, 2, 3, 4

Fed. R. Civ. P. 12(f)................................................................................................... 11

**INTRODUCTION**

Plaintiffs Jack Scalfani and Ron Stern ("Plaintiffs") are business owners who accepted an offer of business-purpose credit from defendant Advanta Bank Corp. ("Advanta"), a bank chartered by and headquartered in the State of Utah.  The contract defining their rights and obligations as Advanta cardholders (the "Agreement") contained a mandatory Utah forum-selection clause.  Plaintiffs instead filed suit in California, and now seek to avoid the forum selection clause.  They have not carried their "heavy burden" of negating the strong presumption in favor of enforcing the contractual forum-selection clause.

To begin with, Plaintiffs fail to acknowledge any of the on-point Ninth Circuit or California district court opinions in arguing that Second and Sixth Circuit law precludes enforcement of forum selection clauses under Rule 12(b)(3).  It is well-settled that in the Ninth Circuit courts treat a motion to enforce a forum selection clause as a Rule 12(b)(3) motion, regardless of whether the case originally was filed in a district court or removed by defendants.  *See, e.g.*, *Waters v. Advent Prod. Dev., Inc.*, No. 07cv2089 BTM (LSP), 2008 U.S. Dist. LEXIS 50686, at *18-*19 (S.D. Cal. June 26, 2008).  Second, Plaintiffs fail to carry their burden of establishing any of the recognized exceptions to the enforcement of forum-selection clauses.  Third, Advanta *cannot elect to arbitrate Plaintiffs' claims* because the arbitrator selected in the Agreement recently entered into a consent decree preventing the arbitrator from accepting any new credit card disputes.  Advanta stipulates that it will not seek to arbitrate Plaintiffs' claims in this action if it is re-filed in or transferred to Utah.  Accordingly, ordering Plaintiffs to proceed with this case in Utah would not in itself preclude prosecution of this putative class action.  In the alternative, Defendants have demonstrated that it is in the interest of justice or in the convenience of the witnesses to transfer this case to Utah.  Finally, Advanta has provided a declaration stating that absent a default by the cardholder, it will not re-price any of its business card accounts, all of which have been closed to new charges since May 2009.

**ARGUMENT**

I.   **PLAINTIFFS HAVE NOT OVERCOME THE PRESUMPTION IN FAVOR OF ENFORCING THE AGREEMENT'S FORUM SELECTION CLAUSE.**

   A.   **Defendants May Enforce A Forum Selection Clause After Removal Through A Rule 12(b)(3) Motion.**

Plaintiffs do not even recognize that their procedural argument has been rejected squarely and repeatedly by California district courts:  "Under Ninth Circuit law, a defendant who removes an action to federal court may subsequently seek to enforce a forum selection clause by way of a rule 12(b)(3) motion to dismiss."  *Waters*, 2008 U.S. Dist. LEXIS 50686 at \*18-\*19; *see also Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A., Inc.*, 118 F. Supp. 2d 997, 998-1000 (C.D. Cal. 2000) (granting Rule 12(b)(3) motion after concluding that defendants did not waive right to enforce forum selection clause by removing action to federal court); *Soil Shield Int'l v. Lilly Indus. Inc.*, No. C 98-1353 SC, 1998 U.S. Dist. LEXIS 8002, at \*3-\*6 (N.D. Cal. May 29, 1998) (granting Rule 12(b)(3) motion based on forum selection clause because:  "[t]he law is clear.  Defendants have not waived any objection to venue by removing this action to federal court").[1]

Without even acknowledging these district court opinions, Plaintiffs argue that the legal rule is different in removed cases.  *See* Opp'n at 6 n.2.  In fact, the Ninth Circuit has affirmed a Rule 12(b)(3) order dismissing a removed action based on a contractual forum selection clause.  *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 866, 867-68 (9th Cir. 1991).  Five years later, the Ninth Circuit ruled that a motion to enforce a forum selection clause should be treated as a Rule 12(b)(3) motion, and did not limit its

---

[1]  Defendants stated their intent to enforce the forum selection clause in the Notice of Removal.  *See* Dkt. No. 1 ¶ 22 ("Defendants contemplate filing a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative to transfer the action pursuant to 28 U.S.C. § 1404(a), based on the existence of a mandatory forum selection clause in plaintiffs' contracts with Defendants which required them to file this lawsuit in state or federal court in Utah").  Plaintiffs' selective quotation of Advanta's Notice of Removal (*see* Opp'n at 5:27-28) is only one of the mischaracterizations in the Opposition.  Advanta, for example, never admitted that either plaintiff paid "overcharges" (Opp'n at 3:25-4:1), or that putative class members paid "excess interest rates" (*id.* at 4:28).  Because these misstatements are not material to the issues in this motion, Advanta will not address them now, but Advanta reserves the right to correct these and Plaintiffs' other mischaracterizations or misstatements in the future.

1    ruling to cases originally filed in federal court.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d

2    320, 324 (9th Cir. 1996).  In no subsequent opinion has the Ninth Circuit suggested that a

3    different rule applied in removed cases.  On the contrary, Northern District courts in

4    removed cases have consistently cited *Argueta* for the proposition that a motion to dismiss

5    based on a forum selection clause is treated as a motion for improper venue under Rule

6    12(b)(3).[2]

7         Instead of addressing a single one of the many opinions that have treated motions

8    to enforce forum selection clauses in removed actions as Rule 12(b)(3) motions, Plaintiffs

9    rely on inapposite or out-of-circuit authorities.  *See* Opp'n at 6.  First, "*Kerobo v.*

10   *Southwestern Clean Fuels Corp.*, 285 F.3d 531 (6th Cir. 2002), is contrary to Ninth

11   Circuit law and does not bind this Court."  *Waters*, 2008 U.S. Dist. LEXIS 50686 at *19.

12   Second, there was no forum selection clause at issue either in *Polizzi v. Cowles*

13   *Magazines, Inc.*, 345 U.S. 663 (1953), or in *PT United Can Co. v. Crown Cork & Seal*

14   *Co.*, 138 F.3d 65, 72-74 (2d Cir. 1998).  Moreover, the Second Circuit in *PT United Can*

15   reviewed a Rule 12(b)(3) order of dismissal based on lack of personal jurisdiction,

16   addressing venue only through a *forum non conveniens* analysis.  Third, *Stewart*

17   *Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 n.8 (1988) was not a removed action,

18   and the Supreme Court there only analyzed a defendant's motion pursuant to 28 U.S.C.

19   § 1404 – not a Rule 12(b)(3) motion to dismiss.  Plaintiffs also quote the holding of

20   *Stewart* out of context (*see* Opp'n at 6:24-7:2):  when the Supreme Court held that

21   "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision

22   whether to give effect to the parties' forum-selection clause and transfer this case," it was

23   concluding that federal law *rather than Alabama state law* governed the analysis.  *See* 487

24

---

25   [2] *See, e.g., Forte Technical Sales, LLC v. Freescale Semiconductor, Inc.*, No. C 08-
     2153 JF, 2008 U.S. Dist. LEXIS 79464, at *3-*9 (N.D. Cal. Aug. 26, 2008); *Modius, Inc.*
26   *v. PsiNaptic, Inc.*, No. C 06-02074 SI, 2006 U.S. Dist. LEXIS 28862, at *15-*23 (N.D.
     Cal. May 2, 2006); *Panetta v. SAP Am., Inc.*, No. C-05-01696 RMW, 2005 U.S. Dist.
27   LEXIS 36813, at *6-*11 (N.D. Cal. July 26, 2005); *SeeComm Network Servs. Corp. v.*
     *Colt Telecomms.*, No. C 04-1283 MEJ, at *6-*10 (N.D. Cal. Sept. 3, 2004); *Friberg v.*
28   *Carson Energy, Inc.*, No. C 03-01238 CRB, 2003 U.S. Dist. LEXIS 8709, at *4-*9 (N.D.
     Cal. May 16, 2003); *Soil Shield Int'l*, 1998 U.S. Dist. LEXIS 8002, at *3-*6.

U.S. at 25-32.  The Supreme Court did not suggest that section 1404(a) was the exclusive method for enforcing a forum selection clause.  *Id.*  Similarly, the footnote Plaintiffs reference (Opp'n at 6:17-20) does not address a Rule 12(b)(3) motion to dismiss based on a forum selection clause, but rather a motion brought under 28 U.S.C. § 1406(a).  *See Stewart Org.*, 487 U.S. at 28 n.8.  Advanta did not seek to dismiss based on 28 U.S.C. § 1406(a), it sought to dismiss based on the existence of a forum selection clause.  In the Ninth Circuit, this type of motion is treated as a Rule 12(b)(3) motion.  *See Argueta*, 87 F.3d at 324.

### B.    Plaintiffs Had Ample Notice And Opportunity To Opt Out Of The Terms Of The Agreement, Including The Forum Selection Clause.

When Plaintiffs applied for credit, Advanta informed them that it would send them the Agreement upon issuance of their credit cards, and urged them to read the Agreement "carefully" upon receipt.  Amended Declaration of Christina Fuller ("Am. Fuller Decl.") ¶ 2 & Ex. A at 8, Ex. C at 2.  When it first mailed the Agreement to Plaintiffs, Advanta again urged Plaintiffs to "read this Agreement carefully and keep it for your records."  *Id.*, Ex. B at 1, Ex. D at 1.  Plaintiffs acknowledge receipt of the Agreements.  *See* Scalfani Decl. ¶ 3; Stern Decl. ¶ 3.  On its first page, the Agreement states in capital letters that if cardholders "DO NOT WISH TO BE BOUND BY THIS AGREEMENT OR TO ACTIVATE THE ACCOUNT," they should "CUT [THEIR] CARD IN HALF AND RETURN IT" to Advanta (at an address in Utah).  Am. Fuller Decl. Ex. B ¶ 1, Ex. D ¶ 1. Plaintiffs' argument that they had "no opportunity to opt-out" (Opp'n at 9:17) is not correct as a matter of fact.

Plaintiffs' contention that the forum selection clause is unenforceable because they did not have the opportunity to negotiate the Agreement (Opp'n at 4:5-8, 9:18, 12:14-15, 15:20-21) is similarly devoid of merit.  In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the United States Supreme Court concluded that while cruise tickets were non-negotiable and passengers did not have "bargaining parity" with the cruise line, a forum selection clause contained in a contract of adhesion was not *per se* unenforceable.

1   *Id.* at 593-94; *see also Panetta*, 2005 U.S. Dist. LEXIS 36813 at \*9-\*10.  The forum

2   selection clause also was not fundamentally "unfair" because the selected forum (Florida)

3   was not a "remote alien forum," there was no allegation of bad faith in selecting a forum

4   that would discourage passengers from bringing suit, there was no evidence that plaintiffs'

5   acceptance of the forum selection clause was a product of fraud or overreaching, and

6   plaintiffs conceded that they were given notice of the forum selection clause.  *Carnival*

7   *Cruise Lines*, 499 U.S. at 594-95.  Based on these factors, the Supreme Court concluded

8   that the forum selection clause should be enforced.  The same factors demonstrate that

9   Advanta's forum selection clause is not fundamentally unfair.

10      Plaintiffs are reduced to taking issue with the legibility of the Agreement.  *See*

11   Opp'n at 1:9; *see also* Scalfani Decl. ¶ 4; Stern Decl. ¶ 4.  First, the Agreement that has

12   been scanned is less legible than the original document that Plaintiffs received, but the

13   forum selection clause set out in capital letters at paragraph 31 of the Agreement is still

14   legible and readable even in the electronically-filed version.  *See* Am. Fuller Decl. ¶ 2 &

15   Ex. B; *id.* ¶ 4 & Ex. D.  Second, both Scalfani and Stern are business owners:  Scalfani

16   runs three businesses by himself, with no employees (Scalfani Decl. ¶ 2), and Stern

17   operates his own business and has two employees (Stern Decl. ¶ 2).  As business owners,

18   they should be able to review and understand standard contract terms.  Importantly,

19   neither plaintiff claims that he could not or did not read the Agreement or understand the

20   forum selection clause.  *See* Scalfani Decl., Stern Decl.

21      Moreover, the egregious circumstances of the cases relied upon by Plaintiffs are

22   absent here, where Plaintiffs had reasonable notice.  For example, the Ninth Circuit

23   concluded in *Holland America Line Inc. v. Wärtsilä North America, Inc*., 485 F.3d 450

24   (9th Cir. 2007), that the forum selection clause contained in a purchase order was

25   unenforceable because there was no evidence that the agreement containing the clause

26   ever had been communicated to defendants.  *See id.* at 458.  In contrast, Advanta provided

27   evidence that it mailed the Agreement to Plaintiffs, and that Plaintiffs could opt out of the

28   Agreement after having the opportunity to review it and to discuss its terms with Advanta.

1   *See* Am. Fuller Decl. Ex. B ¶ 1, Ex. D ¶ 1; *see also* Scalfani Decl. ¶ 3; Stern Decl. ¶ 3

2   (Plaintiffs admit receiving the Agreement but fail to acknowledge that they could have

3   rejected it by returning their cards to Advanta).  Here, both Scalfani and Stern are business

4   owners, who applied for business credit cards; the forum selection clause is contained in a

5   short document and set out in capital letters[3]; and plaintiffs had the opportunity to opt out

6   of the terms of the Agreement upon first receiving the Agreement with their cards.

7   Plaintiffs here had "ample opportunity to become familiar" with the terms of the

8   Agreement – including the choice of forum clause – and to opt out of the Agreement.  *See*

9   *Deiro v. Am. Airlines, Inc*., 816 F.2d 1360, 1365 (9th Cir. 1987).[4]

10          The contract at issue in *Dempsey v. Norwegian Cruise Line*, 972 F.2d 998 (9th Cir.

11   1992) (per curiam), apparently contained at least eight pages (*id.* at 999), the first four of

12   which notified passengers in a boxed notice that they should read certain pages of the

13   ticket that affected important legal rights; and at the beginning of the terms and conditions

14   page, the contract further advised passengers to read the terms and conditions set forth

15   below.  Notably, Advanta only offered business-purpose credit, and therefore was not

16   required to follow requirements associated with offers of *consumer* credit.  *See* Am. Fuller

17   Decl. Ex. B at 1, Ex. D at 1.  Nonetheless, as described above, Advanta took steps to

18   encourage its cardholders to read the Agreement:  Advanta (i) informed customers both

19   before and upon receipt of the Agreement that they should read it "carefully;" (ii) labeled

20   the Agreement "Advanta Business Card Agreement" so that customers would recognize

21   ────────────────
[3] In *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257 (9th Cir. 2006) (en banc), a franchise
22   offering circular contained a forum selection clause, but explicitly stated that the provision
     might not be enforceable in California – the plaintiff's state of residence.  Because the
23   contract "contained language suggesting that the out of state forum selection clause may
     not be enforceable under California law," there was no reasonable expectation that the
24   franchisee had agreed to a forum other than California.  *Id.* at 1290-91.  The forum
     selection clause in the Agreement contains no such "misleading" language, it
25   unequivocally states that any claim "must be brought only" in Utah state or federal courts.
     *See* Am. Fuller Decl. Exs. B ¶ 31, D ¶ 31.

26   [4] In, *Deiro*, the Court of Appeals concluded that an experienced passenger, who had
     "ample opportunity to become familiar" with the liability limitations contained on his
27   ticket but chose not to read it, was contractually bound by the terms of that agreement
     even if the document, in and of itself, did not make the limitation of liability particularly
28   "clear."  816 F.2d at 1364-65.

1  the document as a contract rather than an advertisement; (iii) informed customers that the

2  Agreement governed their accounts, and that Advanta had given them the opportunity to

3  discuss the terms of the Agreement before using their accounts; and (iv) stated in capital

4  letters on the first page of the Agreement that customers who did not wish to be bound by

5  the terms of the Agreement should return their cards to Advanta.  *See supra* pp. 4.  These

6  steps are reasonable and sufficient, especially given that Advanta's business card

7  customers were all business owners.

8      ## C.   Because None Of The Exceptions Articulated In *The Bremen* Is Applicable, The Forum Selection Clause Should Be Enforced.

9

10     Plaintiffs seeking to avoid enforcement of a mandatory forum selection clause bear

11  a "heavy burden" and must show that one of three exceptions applies: (1) inclusion of the

12  clause in the Agreement was a product of fraud or overreaching; (2) Utah is so gravely

13  inconvenient that it would for all practical purposes deprive plaintiffs of their day in court;

14  or (3) enforcing the clause would contravene a strong public policy of California.  *See The*

15  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972); *see also Argueta*, 87 F.3d at 325.

16  Plaintiffs only attempt to establish the second and third exceptions.

17     While Plaintiffs argue that Utah is "gravely difficult and inconvenient," they do so

18  solely on the basis that they are both small business owners.  *See* Opp'n at 8-9, 18; *see*

19  *also* Scalfani Decl. ¶ 2 (owns and operate three small businesses, with no employees);

20  Stern Decl. ¶ 2 (operates a small business, with two employees).  Plaintiffs, however,

21  offer no evidence that trying the case in Utah would prevent them from conducting their

22  businesses, nor do they argue that the inconvenience would be so great that they "will for

23  all practical purposes be deprived of [their] day in court."  *Argueta*, 87 F.3d at 325.

24  Plaintiffs could hardly make that showing given that their counsel[5] will be managing this

25  putative class action.  In any event, Plaintiffs' assertions fall far short of the type of

26

---

27  [5]  The Sturdevant law firm has substantial resources that have enabled it to successfully
28  litigate complex class actions.  *See* www.sturdevantlaw.com (describing itself as a
   "nationally-recognized, award-winning law firm").

1  evidence courts have found sufficient to overcome enforcement of a forum selection

2  clause.  *See, e.g., Pratt v. Silversea Cruises, Ltd.*, No. C 05-0693 SI, 2005 U.S. Dist.

3  LEXIS 14339, at *11-*12 (N.D. Cal. July 13, 2005) ("To meet the heavy burden required

4  to overcome the presumption that a forum selection clause is valid, plaintiff must show

5  that it is an impossibility for her to try her case, not simply a less convenient or effective

6  means of doing so").  Indeed, "neither severe physical limitation nor economic hardship

7  alone is generally enough."  *Id*. at *8 (citing *Murphy v. Schneider Nat'l, Inc*., 362 F.3d

8  1133 (9th Cir. 2004)).

9          Plaintiffs mistakenly argue that enforcing the forum selection clause would

10  contravene a strong public policy of California because Advanta could elect arbitration as

11  soon as the case was transferred to Utah, thereby sounding the "death knell" of this class

12  action.  *See* Opp'n at 13-18.  The true fact is that Advanta cannot do so.  The Agreement

13  identified the National Arbitration Forum ("NAF") as the arbitration forum in which the

14  parties to the Agreement could elect to arbitrate their disputes.  *See* Am. Fuller Decl.

15  Ex. B ¶ 36, Ex. D ¶ 36.   The Agreement does not provide for any other arbitration forum.

16  *Id*.  On July 17, 2009, NAF entered into a consent decree with the State of Minnesota.  *See*

17  Declaration of France Jaffe Ex. A (State of Minnesota Office of the Attorney General

18  Press Release attaching Consent Decree).  The consent decree prevents NAF from

19  accepting any new credit card arbitrations: "Under the settlement, the [NAF] will, by the

20  end of the week, stop accepting any new consumer arbitrations or in any manner

21  participate in the processing or administering of new consumer arbitrations.  The company

22  will permanently stop administering arbitrations involving consumer debt, including credit

23  cards. . . ."  *Id*. at 1.  Advanta therefore cannot elect to arbitrate Plaintiffs' disputes unless

24  plaintiffs also consent to arbitrate in a different forum or Advanta successfully moves to

25  compel arbitration in a different forum.  In any event, *Advanta stipulates that it will not*

26  *seek to arbitrate Plaintiffs' claims if this action is dismissed and re-filed in Utah or*

27  *transferred there*.  If the Court dismisses or transfers the action to Utah, the case will

28  proceed in Utah state or federal courts, both of which allow class actions.  (The class

action ban in the Agreement applies solely to arbitrated disputes, not to court cases.)

Thus, there is no public policy basis for declining to enforce the forum selection clause.

## II.     THE COURT SHOULD TRANSFER THIS ACTION TO THE DISTRICT OF UTAH PURSUANT TO 28 U.S.C. § 1404(a).

There is no basis for Plaintiffs' claim that the "majority of the witnesses in this case will be putative class members." Opp'n at 9:28. Besides the two named Plaintiffs, the majority of the witnesses will in all likelihood be Advanta employees who have knowledge of Advanta's practices and procedures, including the practices and procedures surrounding the re-pricing activities of which Plaintiffs now complain. *See Cardoza v. T-Mobile USA, Inc*., No. 08-5120 SC, 2009 U.S. Dist. LEXIS 25895, at *12-*14 (N.D. Cal. Mar. 18, 2009). Whether this "will be 1, 2, or 10 people" (Opp'n at 10:14) depends in part on Plaintiffs. Plaintiffs' conjecture that "Utah is no more convenient for many of Advanta's employees than California" (*id*. at 10:21) is unfounded and irrelevant. Advanta is headquartered in Utah, giving it access to employee witnesses, office space, computer equipment, clerical support, and its records. *See Foster v. Nationwide Mut. Ins. Co*., No. C 07-04928 SI, 2007 U.S. Dist. LEXIS 95240, at *8-*14 (N.D. Cal. Dec. 14, 2007) (explaining why district where defendant is headquartered and made decision at issue in case is more convenient than district where defendant has no offices). California offers none of those advantages. Advanta selected Utah as a mandatory forum precisely because it deemed Utah to be more convenient; if Advanta believed California was more convenient – despite the fact it had no offices or employees in California – it would have selected California instead. *See generally Carnival Cruise Lines*, 499 U.S. at 593-94 (explaining why entities conducting business with persons in multiple jurisdictions select a single forum for resolution of disputes).

A Utah court is capable of adjudicating Plaintiffs' claims, whether brought under California law or Utah law. *See Foster*, 2007 U.S. Dist. LEXIS 95240 at *15 ("[O]ther federal courts are fully capable of applying California law"). Advanta is not "dragging California citizens" anywhere: it only seeks to enforce the forum selection clause those

California business owners voluntarily accepted. Similarly, it is incorrect that Plaintiffs have no contacts with Utah (Opp'n at 12:8). They contracted with a Utah company (as indicated on Advanta's letterhead, in its Summary of Terms and Conditions, and in its Agreement) and were issued credit out of Advanta's Utah offices after their applications were processed in Utah. *See* Am. Fuller Decl. Ex. B ¶ 31, Ex. D ¶ 31.

## III. PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE AND DECLARATORY RELIEF.

Advanta closed all of its business card accounts in May 2009. *See* Declaration of Kevin Walsh ("Walsh Decl.") at ¶ 4. Advanta customers cannot charge any new purchases on their cards, but they can continue to pay off their balances at the rate they received in May 2009. *Id*. Advanta has not and will not conduct any re-pricing activities on the closed accounts. *Id*. ¶¶ 4-5. If customers default under the terms of the Agreement, the contractual default rates will apply (*id*. ¶ 4), but defaulting customers are excluded from the class definition (Compl. ¶ 40). Plaintiffs concede that Advanta has closed its accounts but argue that it is a "huge assumption" (Opp'n at 19:6) that Advanta will not continue to re-price accounts. The sworn Declaration of Kevin Walsh establishes that as a fact – not an assumption. Advanta will not re-price closed accounts, and there is no risk of repetition.

1

**CONCLUSION**

2          Plaintiffs' claims should be dismissed or transferred to the District of Utah, and

3    their request for injunctive and declaratory relief should be stricken pursuant to Rule

4    12(f).

5    Dated:  August 18, 2009                    Respectfully submitted,

6                                               DECHERT LLP
                                                H. JOSEPH ESCHER III
7                                               FRANCE JAFFE

8                                               By:_____/s/_____
9                                                  H. JOSEPH ESCHER III
                                                   Attorneys for Defendants
10                                                 ADVANTA BANK CORP.
                                                   and ADVANTA CORP.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28